**NORTHWEST MARINE IRONWORKS, INC., Libelant,**

v.

**STEAMER OMNIUM FREIGHTER, her boilers, engines, tackle, apparel, furniture and equipment, Respondent.**

Civ. No. 5-63-78.

United States District Court
D. Minnesota,
Fifth Division.

April 8, 1964.

Sullivan, McMillan, Hanft & Hastings, by Edward T. Fride, Duluth, Minn., for libelant.

Butchart, Fredin & Eaton, by Conrad M. Fredin, Duluth, Minn., for respondent.

DONOVAN, District Judge.

This is a libel action arising out of certain ship repairs for which respondent denies liability. The performance of said repairs is not disputed. In the interest of accuracy it should be said that respondent contends it was not a party to the libel in suit.

The facts to a large extent are undisputed. The evidence discloses that respondent-freighter was built at Houston in 1944 and lengthened in 1957 to become what is known as an "extended Liberty ship." It was acquired by Omnium Freighting Corporation, (herein referred to as Omnium) a division of Mol Ship-

ping and Trading Inc., New York, New York (herein referred to as Mol). Mol and Omnium had common principal officers.

On September 29, 1960, title to the vessel was transferred to Mol. On June 12, 1961, Mol sold it to Lawrence Steamship Company. Contemporaneous with acquisition of title, Lawrence gave Mol a seven-year bare-boat charter [1] at a charter hire of $8,035.00 per month, to be manned, maintained and insured at the expense of the charterer and subject to cancellation and redelivery in the event of default.

In a matter of a few days Lawrence mortgaged the vessel to the Hanover Bank of New York City.

It is conceded that work, labor and materials were furnished by libelant in March 1963 and that the reasonable value thereof is $35,637.00.

Libelant contends that notice of the existence of the bare-boat charter and its provisions was not posted in the chart room or the master's cabin of the vessel and hence libelant had no notice thereof. Libelant further contends that the payment of $7,127.40 made by Mol to libelant was lawfully applied as a credit and did not constitute a compromise or waiver of libelant's rights against the vessel or its owners.

Respondent, to the contrary, contends that notice of the bare-boat charter and its conditions was properly posted as re-quired by custom and that libelant is bound thereby. Respondent further claims that acceptance of said sum constituted a waiver of all rights of libelant in the premises.

The issues involved herein are simply these:

1. Was the required section of the bare-boat charter posted as contended by respondent?

2. Did libelant exercise reasonable diligence, by inquiry or search, to determine ownership of the vessel in question before extending credit for work performed and materials provided?

3. Did libelant waive its rights by accepting part payment and thereby surrender its lien on the vessel?

The Court is presented with a disputed fact question on the matter of posting.[2] Libelant's testimony and evidence refute respondent's claim that said notice was posted. The evidence preponderates in libelant's favor clearly showing that there was no notice posted as required at the time and places in question.

It is established law that a materialman must make reasonable inquiry to determine whether the party ordering repairs or materials has the power to bind the vessel.[3] The absence of posting would not justify the conclusion that there was no charter or mortgage that prevented a lien but the supplier must

---

1. Under a section of the bare-boat charter dealing with "libels" it was provided that "Neither Charterer nor the master of the Vessel nor any other person shall have the right, power or authority to create, incur or permit to be placed or imposed upon the Vessel any liens whatsoever other than for crew's wages or salvage. Charterer agrees to carry properly certified copies of this charter and the mortgage with the ship's papers on board the Vessel, and agrees to exhibit the same to any person having business with the Vessel, and agrees also to exhibit the same to any representatives of the Owner or the Mortgagee on demand."

   This section further provided that charterer would notify persons effecting repairs of the existence of the charter and would post notices of the existence of the charter in the chart room and in the master's cabin of the vessel. There may be some controversy on the question whether notice was posted.

2. 46 U.S.C.A. § 973 provides:
   " * * * nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

3. 46 U.S.C.A. § 973.

945

nonetheless make reasonable inquiry.[4]

The evidence of the case at bar shows that libelant had dealings with the Omnium group concerning the Omnium Freighter prior to the event that gave rise to this suit. Libelant on that occasion checked the ownership of the vessel. When the vessel returned to libelant's shipyard, negotiations were conducted by the same parties that had previously dealt with libelant. Omnium still controlled the vessel, its officers and crew. The name had not changed. All bills had been promptly paid by Omnium.

Respondent cites the case of The Liberator[5] in support of the proposition that prior dealings do not relieve the duty to inquire. The libelant in that case relied upon the fact that all vessels previously serviced for the Atlantic, Gulf & Pacific Steamship Corporation were owned by that company. In fact the vessel was owned by the United States and Atlantic was a vendee in possession. There was no indication that libelant had previous contact with the Liberator. In the present case libelant had inquired about the ownership of the Omnium Freighter and found that at the time of inquiry Mol was the owner. Libelant searched the pilot house for notices before providing repairs and found none. The ship in suit was to all appearances owned and operated by Mol.

The sale and lease back procedure, as used in this instance, created an unusual circumstance whereby persons who have had dealings with the vessel prior to the sale would be easily misled. The silence of the master of the freighter with his knowledge of possible misunderstanding suggests overreaching. It is the opinion of the Court that notice was not posted and that libelant exercised reasonable diligence to ascertain ownership of the vessel before repairs and parts were supplied as ordered.

Libelant should recover the amount due for repairs less the amount paid by Mol. It is the understanding of the Court that under the agreement between Mol and libelant there is to be a second payment due at some future date. Any and all such payments received by libelant should be deducted from libelant's recovery from respondent.

Libelant may submit findings of fact, conclusions of law, order for and form of judgment consistent with the foregoing.

It is so ordered.

Respondent is allowed an exception.

4. Lindbar, Incorporated v. St. Louis Fuel & Supply Co., 6 Cir., 276 F.2d 882.

5. The Liberator, 4 Cir., 5 F.2d 585.